# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

—————————————

№ 07-CV-4113 (JFB)

—————————————

GEORGE SWANTON,

Petitioner,

VERSUS

HAROLD GRAHAM, SUPERINTENDENT, AUBURN CORRECTIONAL FACILITY,

Respondent.

—————————————

**MEMORANDUM AND ORDER**
May 19, 2009

—————————————

JOSEPH F. BIANCO, District Judge:

George Swanton (hereinafter, "petitioner") petitions this Court for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, to vacate his conviction in state court for two counts of Robbery in the First Degree. Petitioner challenges his conviction on the following grounds, alleging that: (1) he was under duress when he pled guilty because the court threatened the imposition of a 25-50 year sentence, thereby presuming his guilt; (2) he was provided with ineffective assistance of counsel because counsel waived petitioner's right to appeal without his consent; (3) the indictment used to establish jurisdiction was insufficient to establish the crimes charged, in that the petitioner was unarmed during the robberies (and, instead, used notes indicating possession of a weapon); (4) there is factual insufficiency from the allocution to support a guilty plea;[1] and (5) he was subjected to double jeopardy, because he was sentenced for the same crime twice and will be doubly punished by the imposition of post-release supervision after his term of imprisonment ends. By petition dated September 20, 2007, petitioner seeks habeas relief from this Court. For the reasons set forth below, the Court finds that the petition is time-barred, the claims are procedurally barred/defaulted and, in any event, all the claims fail on the merits. Accordingly, the petition is denied in its entirety.

———————————————————

[1] The Court notes that petitioner's argument regarding insufficient allocution was not listed on the petition form in the "grounds" section, as were his remaining claims. However, in an abundance of caution, the Court will review the merits of that claim herein.

## I. BACKGROUND

Petitioner was indicted by a Grand Jury in the Supreme Court of the State of New York, Suffolk County (the "trial court") on October 3, 2003, on two counts of Robbery in the First Degree, N.Y. Penal Law § 160.15[1].

On May 18, 2004, petitioner pled guilty to two counts of Robbery in the First Degree in full satisfaction of the charges for which he had been indicted. In particular, petitioner admitted during his plea allocution that, on September 27, 2003, he forcibly stole $1,700.00 from a Fleet Bank. He further stated that he gave the bank teller a note that stated, "Give me all the money, I got a gun, if you give me a [dye] pack I'll kill you." (Transcript of May 18, 2004 Plea Hearing ("Plea Tr.") at 8-9.) Petitioner further stated that he stole approximately $5,000.00 from a HSBC Bank on September 30, 2003. He told the court that he directed the bank teller as follows: "Give me all the 100s, 50s and 20s, I got a gun, if you give me a [dye] pack I'll kill you." (Plea Tr. at 9.) Petitioner agreed to the plea to both counts of the indictment with the understanding that the court would sentence petitioner to twelve years on each count, to be served concurrently, and would include five years' post-release supervision. Petitioner was specifically advised of this sentencing recommendation at the time of his plea and stated that he understood those to be the terms of the plea agreement. (Plea Tr. at 3-4.)

On June 17, 2004, petitioner was sentenced to two twelve-year terms, to be served concurrently, with five years' post-release supervision. (Transcript of June 17, 2004 Sentencing Hearing ("Sentencing Tr.") at 4.) Petitioner filed an appeal on the grounds that his sentence was harsh and excessive, and that his allocution was insufficient to support the crimes charged. On March 14, 2006, the Appellate Division, Second Department, affirmed his conviction. *People v. Swanton*, 27 A.D.2d 591 (N.Y. App. Div. 2006). On April 21, 2006, the New York State Court of Appeals denied petitioner's application for leave to appeal. *People v. Swanton*, 6 N.Y.3d 853 (N.Y. 2006).

Petitioner did not seek direct review of his conviction by the United States Supreme Court, nor does the record reflect that Petitioner took any subsequent action with respect to his conviction until 2007.[2] On September 26, 2007, *pro se* petitioner filed the instant petition before this Court for a writ of habeas corpus, dated September 20, 2007.[3] This Court issued an Order to Show Cause on October 3, 2007. Respondent filed his opposition on December 12, 2007. Petitioner

---

[2] Petitioner asserts that he filed a N.Y. C.P.L. § 440.10 motion to vacate his sentence before the trial court on September 29, 2006, which was denied on that same date. The Court has no evidence beyond petitioner's assertion indicating that such a motion was filed. However, even assuming *arguendo* that this motion was filed, it would not toll the statute of limitations so as to render the instant petition timely (as discussed *infra*), because petitioner represents that the motion was decided on the same day that it was filed. (*See* Petition at 4.)

[3] Although the petition was filed in the Clerk's office on September 26, 2007, the Court deems the petition filed on September 20, 2007, the date on which it was signed. *See Houston v. Lack*, 487 U.S. 266, 270-71 (1988) (holding that the notice of appeal of a *pro se* incarcerated litigant is deemed filed when delivered to prison officials for mailing); *see also Noble v. Kelly*, 246 F.3d 93, 98 (2d Cir. 2001) (concluding "that the district court properly extended the prison mailbox rule to petitions for writs of *habeas corpus*").

2

submitted a reply on January 16, 2009. This matter is fully submitted.

## II. STANDARD OF REVIEW

To determine whether a petitioner is entitled to a grant of a writ of habeas corpus, a federal court must apply the standards of review mandated by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214. The statute provides, in relevant part, that:

> (d) [a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254. "Clearly established Federal law" is comprised of "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state court decision." *Green v. Travis*, 414 F.3d 288, 296 (2d Cir. 2005) (quoting *Williams v.*

*Taylor*, 529 U.S. 362, 412 (2000)).

A decision is "contrary to" clearly established federal law, as determined by the Supreme Court, "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413; *see also Earley v. Murray*, 451 F.3d 71, 74 (2d Cir. 2006). A decision is an "unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413; *see also Earley*, 451 F.3d at 74.

AEDPA establishes a deferential standard of review wherein "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be *unreasonable*." *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001) (quoting *Williams*, 529 U.S. at 411) (emphasis added). The Second Circuit has noted that although "[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Gilchrist*, 260 F.3d at 93 (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)); *accord Earley*, 451 F.3d at 74.

When reviewing a habeas petition, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or

3

treaties of the United States. 28 U.S.C. § 2241; *see also Rose v. Hodges*, 423 U.S. 19, 21 (1975) (per curiam); *Cook v. N.Y. State Div. of Parole*, 321 F.3d 274, 277 (2d Cir. 2003). Federal habeas corpus relief does not lie for errors of state law. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (citing *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)); *see also Pulley v. Harris*, 465 U.S. 37, 41 (1984); *DiGuglielmo v. Smith*, 366 F.3d 130, 136-37 (2d Cir. 2004); *Lydon v. Kuhlman*, 62 F. Supp. 2d 974, 977-78 (E.D.N.Y. 1999).

### III. DISCUSSION

#### A. Timeliness

Respondent submits that the instant petition is untimely because petitioner failed to file it within the applicable statute of limitations provided by 28 U.S.C. § 2244(d)(1). For the reasons set forth below, the Court agrees, and further finds that there is no basis for equitable tolling.

The AEDPA imposes a one-year statute of limitations on state prisoners seeking habeas corpus review in federal court. 28 U.S.C. § 2244(d)(1). The statute begins to run from the latest of:

> (A) the date on which the [petitioner's] judgment [of conviction] became final by the conclusion of direct review or the expiration of the time for seeking such review;

> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if

the applicant was prevented from filing by such State action;

> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A-D). Pursuant to the AEDPA, "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation." 28 U.S.C. § 2244(d)(2). The Second Circuit has held that a state court application or motion for collateral relief is "'pending' from the time it is first filed until finally disposed of and further appellate review is unavailable under the particular state's procedures." *Bennett v. Artuz*, 199 F.3d 116, 120 (2d Cir. 1999); *see also Carey v. Saffold*, 536 U.S. 214, 217, 220-21 (2002); *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000); *Gant v. Goord*, 430 F. Supp. 2d 135, 137 (W.D.N.Y. 2006).

In the instant case, subsections (B) through (D) of Section 2244(d)(1) are inapplicable and, therefore, the statute of limitations began to run on the date petitioner's conviction became final, pursuant to Section 2244(d)(1)(A).

On April 21, 2006, the New York State Court of Appeals denied petitioner's application for leave to appeal. Pursuant to Supreme Court Rule 13(1), the time for petitioner to seek review in the United States Supreme Court expired ninety days later. *See Williams v. Artuz*, 237 F.3d 147, 150 (2d Cir. 2001) ("[A] Petitioner's 'conviction becomes final for [AEDPA] purposes when his time to seek direct review in the United States Supreme Court by writ of certiorari expires.'") (quoting *Ross v. Artuz*, 150 F.3d 97, 98 (2d Cir. 1998)). Accordingly, petitioner's conviction became final and the one-year limitation period began to run on July 20, 2006, and it expired one year later on July 20, 2007.

Here, the habeas petition was filed on September 20, 2007, which is beyond the one-year limitation period.[4]

B. Equitable Tolling

Although the instant petition is untimely, in "rare and exceptional" circumstances, the one-year statute of limitations is subject to equitable tolling. *See Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000); *see also Warren v. Garvin*, 219 F.3d 111, 113 (2d Cir. 2000). In order to obtain the benefit of equitable tolling, a petitioner must demonstrate that: (1) "extraordinary circumstances prevented him from filing his petition on time"; and (2) he "acted with reasonable diligence throughout the period he seeks to toll." *Smith*, 208 F.3d at 17. The petitioner bears the burden to affirmatively show that he is entitled to equitable tolling. *See Tho Dinh Tran v. Alphonse Hotel Corp.*, 281 F.3d 23, 37 (2d Cir. 2002).

In order for a petitioner to meet this burden, he "must demonstrate a causal relationship between the extraordinary circumstances on which his claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances. Hence, if the person seeking equitable tolling has not exercised reasonable diligence in attempting to file after the extraordinary circumstances began, the link of causation between the extraordinary circumstances and the failure to file is broken, and the extraordinary circumstances therefore did not prevent timely filing." *Baldayaque v. United States*, 338 F.3d 145, 150 (2d Cir. 2003) (quoting *Hizbullahankhamon v. Walker*, 255 F.3d 65, 75 (2d Cir. 2001)). Moreover, with respect to medical conditions or mental impairments, equitable tolling is generally considered appropriate where a plaintiff's medical condition or mental impairment prevented him from proceeding in a timely fashion. *See, e.g., Brown v. Parkchester S. Condos.*, 287 F.3d 58, 60 (2d Cir. 2002); *Canales v. Sullivan*, 936 F.2d 755, 758 (2d

---

[4] As stated *supra*, "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation," 28 U.S.C. § 2244(d)(2), and, therefore, if petitioner did file a § 440.10 motion between July 20, 2006 and July 20, 2007, the limitations period would toll during the pendency of that motion. However, petitioner represents that such a motion was filed on September 29, 2006 and denied on that same date. Accordingly, since petitioner represents that not a single day passed during the pendency of that purported motion, the statute is not tolled and the proper deadline for the filing of the instant petition remains July 20, 2007, one year after his time to seek direct review by the Supreme Court expired.

Cir. 1991). However, in order for a medical condition or mental impairment to toll the statute, the petitioner must provide "a particularized description of how [his] condition adversely affected [his] capacity to function generally or in relationship to the pursuit of [his] rights." *Boos v. Runyon*, 201 F.3d 178, 185 (2d Cir. 2000).

In the instant case, petitioner has asserted that he failed to timely file the instant petition because his alleged mental illness and related medical treatment prevented him from doing so. (Petition at 13.) Such an argument is unavailing under the circumstances of this case. Petitioner has failed to provide the Court with any objective evidence substantiating his claims of disability, detailing how long such a disability lasted, or describing how the disability was causally related to his failure to timely file the instant petition.[5] *See, e.g., Victorial v. Burge*, 477 F.

---

[5] Petitioner did submit a document entitled "Proceedings For Commitment of a Mentally Ill Inmate To a State Hospital for the Mentally Ill, In The State Office of Mental Health," dated February 7, 2008 and signed by Justice Samuel D. Hester of the Supreme Court of the State of New York, Oneida County, ordering that petitioner remain at the Central New York Psychiatric Center in Marcy, New York for a period not to exceed six months, upon the application and certification of Donald Sawyer, Ph.D., dated January 30, 2008. (*See* Petitioner's Opposition at 6.) However, this document does not describe petitioner's alleged infirmity, nor does it detail the time period in which he was allegedly suffering from it. Moreover, even if the document had demonstrated that petitioner was, in fact, mentally ill, and that he had been during the relevant time period, *i.e.*, between July 20, 2006 and July 20, 2007, petitioner fails to explain how the alleged infirmity that led to this Order specifically prevented him from filing his petition in a timely

Supp. 2d 652, 655 (S.D.N.Y. 2007) (petitioner's bipolar disorder did not warrant equitable tolling where petitioner failed to demonstrate that the illness "affected his ability to act with due diligence during the time period at issue" or was causally connected to his failure to timely file his petition); *Lee v. Superintendent, Attica Corr. Facility*, No. 05-CV-5706 (ARR), 2006 WL 229911, at *2 (E.D.N.Y. Jan. 31, 2006) ("[P]etitioner's allegations do not demonstrate that these health problems rendered him unable to pursue his legal rights during the one-year limitations period."); *Williams v. Phillips*, No. 02 CV 5882 (SJ), 2005 WL 1072711, at *2 (E.D.N.Y. Apr. 29, 2005) (petitioner's claim of mental impairment and proof that medical tests were conducted during the relevant time period did not constitute adequate evidence of a "disabling condition" warranting equitable tolling); *Simpson v. Greene*, No. 03 Civ. 6323, 2003 WL 22999489, at *3 (S.D.N.Y. Dec. 22, 2003) (court declined to toll statute of limitations where petitioner's medical records provided insufficient evidence of "insurmountable problems in [his] mental status"); *Barbosa v. United States*, No. 01 Civ. 7522 (JFK), 2002 WL 869553, at *2-*3 (S.D.N.Y. May 3, 2002) ("conclusory" allegations of physical infirmity, coupled with medical reports indicating that petitioner did "at some point suffer[] from physical ailments" did not warrant equitable tolling); *Rhodes v. Senkowski*, 82 F. Supp. 2d 160, 173 (S.D.N.Y. 2000) ("[A] petitioner must allege more than the mere existence of physical or mental ailments to justify equitable tolling. A petitioner has the burden to show that these health problems rendered him unable to

---

manner. Accordingly, this document is wholly inadequate to substantiate petitioner's argument for equitable tolling.

pursue his legal rights during the one-year time period.") (collecting cases). Accordingly, petitioner's unsubstantiated claims of mental illness and hospitalization do not provide a basis for equitable tolling where such evidence would be easily obtained and is readily available to petitioner. Moreover, this Court finds petitioner's conclusory excuse to be legally insufficient to justify equitable tolling because he has failed to demonstrate that his mental condition prevented him from pursuing his legal rights throughout the one-year period.

Petitioner further argues that he failed to exhaust his state remedies because he "[doesn't] know much about the law." (Petition at 6, 8.) However, to the extent petitioner is asserting that ignorance of the law also prevented him from filing the instant petition in a timely manner, the Court rejects such an argument, as it is well-settled that a mistake or lack of legal knowledge is not an excuse under the law, and any equitable tolling argument arising therefrom is without merit. *See, e.g., Forbes v. Walsh*, No. 04-CV-5076 (LAK), 2007 WL 54792, at *4 (S.D.N.Y. Jan. 9, 2007) ("[T]hat [petitioner] was ignorant of the law and had to rely on other inmates for help – are not 'extraordinary' [circumstances], as they apply to most inmates."); *Williams v. Breslin*, No. 03-CV-1848 (RWS), 2004 WL 2368011, at *6 (S.D.N.Y. Oct. 20, 2004) ("A lack of legal knowledge, however, cannot excuse a delay in filing a petition.") (internal quotation and citation omitted); *Ayala v. Miller*, No. 03-CV-3289 (JG), 2004 WL 2126966, at *2 (E.D.N.Y. Sept. 24, 2004) ("Neither a prisoner's pro se status, nor his lack of legal expertise, provides a basis for equitable tolling of AEDPA's statute of limitations."); *Hickey v. Senkowski*, No. 02 Civ. 1437 (DC), 2003 WL 255319, at *4 (S.D.N.Y. Feb. 4,

2003) (petitioner's mistake of law did not constitute an extraordinary or unusual circumstance meriting equitable tolling); *Cuevas v. New York*, No. 01 Civ. 2550 (RWS), 2002 U.S. Dist. LEXIS 2011, at *7 (S.D.N.Y. Feb. 11, 2002) ("[I]t is well-settled that 'ignorance of the law' does not entitle a petitioner to equitable tolling."); *Fennell v. Artuz*, 14 F. Supp. 2d 374, 377 (S.D.N.Y. 1997) (excuse of "being uneducated and not familiar with legal research and legal procedures" did not warrant equitable tolling because it could be made by "virtually all inmates").

In short, petitioner has not presented any evidence of grounds that warrant equitable tolling, nor has he made a showing of actual innocence. *See Whitley v. Senkowski*, 317 F.3d 223, 225 (2d Cir. 2003) (holding that it was in error to dismiss a petition claiming actual innocence, on statute of limitations grounds, without further analysis). Accordingly, the petition is dismissed as time-barred. However, in an abundance of caution, the Court finds that, even assuming *arguendo* that the petition was timely, the claims are procedurally barred and/or defaulted and, in any event, fail on the merits.

C. Exhaustion and Procedural Default

Petitioner has exhausted some, but not all, of the claims he raises in the instant petition. As set forth *infra*, the following claims asserted by petitioner are not only unexhausted, but are procedurally defaulted because petitioner failed to raise them on direct appeal: (1) involuntary and coercive plea; (2) ineffective assistance of counsel; (3) defective indictment; and (4) double jeopardy. Similarly, petitioner's insufficient allocution claim, although sufficiently exhausted, is procedurally barred. In any event, even

assuming *arguendo* that these claims were all reviewable, they are without merit.

### 1. Failure to Exhaust State Remedies

As a threshold matter, a district court shall not review a habeas petition unless "the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1). Although a state prisoner need not petition for certiorari to the United States Supreme Court to exhaust his claims, *see Lawrence v. Florida*, 549 U.S. 327, 332 (2007), petitioner must fairly present his federal constitutional claims to the highest state court having jurisdiction over them. *See Daye v. Attorney Gen. of New York*, 696 F.2d 186, 191 (2d Cir. 1982) (en banc). Exhaustion of state remedies requires that a petitioner "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971) (quotation marks omitted) (alteration in original)). However, "it is not sufficient merely that the federal habeas applicant has been through the state courts." *Picard*, 404 U.S. at 275-76. On the contrary, to provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), alerting that court to the federal nature of the claim and "giv[ing] the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *see also Duncan*, 513 U.S. at 365-66. "A petitioner has 'fairly presented' his claim only if he has 'informed the state court of both the factual

and the legal premises of the claim he asserts in federal court.'" *Jones v. Keane*, 329 F.3d 290, 294-95 (2d Cir. 2003) (quoting *Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997) (quoting *Daye*, 696 F.2d at 191)). "Specifically, [petitioner] must have set forth in state court all of the essential factual allegations asserted in his federal petition; if material factual allegations were omitted, the state court has not had a fair opportunity to rule on the claim." *Daye*, 696 F.2d at 191-92 (citing *Picard*, 404 U.S. at 276 and *United States ex rel. Cleveland v. Casscles*, 479 F.2d 15, 19-20 (2d Cir. 1973)). To that end, "[t]he chief purposes of the exhaustion doctrine would be frustrated if the federal habeas court were to rule on a claim whose fundamental legal basis was substantially different from that asserted in state court." *Daye*, 696 F.2d at 192 (footnote omitted).

In the instant case, the Court finds that only petitioner's claim of insufficient allocution is properly exhausted.[6] However,

---

[6] Petitioner raised his claim of insufficient allocution in his direct appeal, but the Appellate Division deemed the claim unpreserved for appellate review based on petitioner's failure "either to move to withdraw his plea on this ground before the imposition of sentence or to vacate the judgment pursuant to CPL 440.10." *People v. Swanton*, 27 A.D.2d 591, 591 (N.Y. App. Div. 2006) (citing N.Y. C.P.L. § 470.05). It is well-settled that a petitioner's federal claim may be procedurally barred from habeas review if it was decided at the state level on "adequate and independent" procedural grounds. *See Coleman v. Thompson*, 501 U.S. 722, 729-33 (1991). The procedural rule at issue is adequate if it is "firmly established and regularly followed by the state in question." *Garcia v. Lewis*, 188 F.3d 71, 77 (2d Cir. 1999). To be independent, the "state court must actually have relied on the procedural bar as an independent basis for its disposition of the

8

petitioner's failure to seek leave to appeal the remainder of his instant claims to the Court of Appeals renders those claims unexhausted. As a result, the Court finds the instant habeas petition to be "mixed."

In such a situation, where claims in a federal habeas petition have not been exhausted, the federal court may determine that no available procedures remain in state court by which a petitioner may exhaust the

case," *Harris v. Reed*, 489 U.S. 255, 261-62 (1989), by "clearly and expressly stat[ing] that its judgment rests on a state procedural bar." *Id*. at 263 (internal quotations omitted). Generally, the Second Circuit has deferred to state findings of procedural default as long as they are supported by a "fair and substantial basis" in state law. *Garcia*, 188 F.3d at 78 (citing *Arce v. Smith*, 889 F.2d 1271, 1273 (2d Cir. 1989)). The Court finds that the decision of the Appellate Division meets the aforementioned requirements and, therefore, its determination that petitioner's claim was procedurally barred forecloses its review by this Court. *See Peterson v. Scully*, 896 F.2d 661, 663 (2d Cir. 1990) (internal citation omitted) ("If a state appellate court refuses to review the merits of a criminal defendant's claim of constitutional error because of his failure to comply with . . . a 'contemporaneous objection' rule [Section 470.05], a federal court generally may not consider the merits of the constitutional claim on habeas corpus review."); *see also Bossett v. Walker*, 41 F.3d 825, 829 n.2 (2d Cir. 1994) (respecting state court's application of § 470.05(2) as an adequate bar to federal habeas review); *Lawreth v. Conway*, 493 F. Supp. 2d 662, 668-69 (W.D.N.Y. 2007) (finding claim procedurally defaulted because "[i]n New York, the firmly established and regularly followed rule for preserving a claim that a guilty plea was involuntarily entered requires a defendant to move to withdraw the plea or to vacate the judgment of conviction."). However, for reasons stated *infra*, petitioner's claim of insufficient allocution would, in any event, fail on the merits.

claims. *See* 28 U.S.C. § 2254(b) (petition shall not be granted unless exhaustion has occurred or "there is an absence of available state corrective process"); *see also Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001). "In such a case the habeas court theoretically has the power to deem the claim exhausted." *Aparicio*, 269 F.3d at 90 (citing *Reyes v. Keane*, 118 F.3d 136, 139 (2d Cir. 1997)). Here, all but one of petitioner's claims are irreparably unexhausted, as he already perfected his one appeal as of right to the Court of Appeals, pursuant to New York Court Rules § 500.10. However, by finding that these claims can no longer be exhausted, this Court deems them exhausted, but procedurally defaulted, as described below.

2. State Procedural Requirements

Like the failure to exhaust a claim, the failure to satisfy the state's procedural requirements deprives the state courts of an opportunity to address the federal constitutional or statutory issues in a petitioner's claim. *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). "[A] claim is procedurally defaulted for the purposes of federal habeas review where 'the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Reyes v. Keane*, 118 F.3d 136, 140 (2d Cir. 1997) (quoting *Coleman*, 501 U.S. at 735) (additional citations omitted). Where the petitioner "can no longer obtain state-court review of his present claims on account of his procedural default, those claims are . . . to be deemed exhausted." *DiGuglielmo v. Smith*, 366 F.3d 130, 135 (2d Cir. 2004) (citing *Harris v. Reed*, 489 U.S. 255, 263 n.9 (1989) and *Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir. 1991)).

Therefore, for exhaustion purposes, "a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred." *Keane*, 118 F.3d at 139 (quoting *Hoke*, 933 F.2d at 120 (quoting *Harris*, 489 U.S. at 263 n.9)).

The purpose of the procedural bar rule is to maintain the delicate balance of federalism by retaining a state's rights to enforce its laws and maintain its judicial procedures as it sees fit. *Coleman*, 501 U.S. at 730-33. Thus, a federal habeas court may not review a procedurally barred claim on the merits unless the petitioner can demonstrate "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim[] will result in a fundamental miscarriage of justice." *Id.* at 750. A fundamental miscarriage of justice only occurs when "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

In the instant case, following his conviction, petitioner filed a direct appeal to the New York Appellate Division, arguing that his allocution at the plea was insufficient to establish the crime of robbery in the first degree, and the sentence imposed was harsh and excessive and should be modified in the interest of justice. *People v. Swanton*, 27 A.D.3d 591 (N.Y. App. Div. 2006). In petitioner's letter application to the New York Court of Appeals, he raised the same two issues. *See People v. Swanton*, 6 N.Y.3d 853 (N.Y. 2006). The remaining claims petitioner now brings before this Court were not presented to the Appellate Division or the New York State Court of Appeals for review; consequently, any subsequent application for

appellate review of those claims would be futile, rendering them procedurally defaulted.[7] *See, e.g., Martinez v. Kelly*, No. 01 Civ. 11570DABJCF, 2005 WL 1863854, at *4 (S.D.N.Y. Aug. 4, 2005) (failure to present claim to Appellate Division and Court of Appeals would result in procedural bar, pursuant to N.Y. Court of Appeals Rule 500.10(a)); *King v. Phillips*, No. 03-CV-4183 (CBA), 2005 WL 1027545, at *3 (E.D.N.Y. May 2, 2005) ("As [petitioner] did not raise any of these claims as federal constitutional issues before the New York Court of Appeals, such claims are unexhausted. Moreover, there are no longer means by which such claims can be presented to the state's highest court, because [petitioner] has used his one permissible request for leave to appeal to the New York Court of Appeals."). Because no further state remedies are available to petitioner for these claims, they are technically exhausted. *Coleman*, 501 U.S. at 732. However, they are procedurally barred, because he did not raise them on direct appeal. *Hoke*, 933 F.2d at 121. Further, petitioner has provided no reasonable explanation for his failure to raise these claims in his direct appeal in state court, nor has he demonstrated that a fundamental miscarriage of justice would occur if these claims were not reviewed by the habeas court. Petitioner's assertion that he did not raise certain issues on appeal because of his admission to a mental health facility is

---

[7] Moreover, as stated *infra*, the entirety of petitioner's unexhausted claims were reviewable from the record and, therefore, he is now foreclosed from raising them collaterally, pursuant to N.Y. C.P.L. §§ 440.10 or 440.30. *See Christodoulou v. Duncan*, No. 99 CV 1847 (ARR), 2005 WL 990999, at *5 (E.D.N.Y. Apr. 14, 2005) (collateral review not available for claims reviewable from the record).

unsupported by evidence and further undermined by the fact that he did perfect his right to direct appeal on one of the claims presented herein. *See People v. Swanton*, 27 A.D.3d 591 (N.Y. App. Div. 2006); *see also People v. Swanton*, 6 N.Y.3d 853 (N.Y. 2006). Accordingly, petitioner's following claims are deemed exhausted, but are procedurally defaulted: (1) involuntary and coercive plea; (2) ineffective assistance of counsel; (3) defective indictment; and (4) double jeopardy. Petitioner's claim of insufficient allocution was properly exhausted in state court, but is also procedurally barred. In any event, even assuming *arguendo* that these claims were reviewable, they are all substantively without merit, as set forth *infra*.

### D. Petitioner's Claims

#### 1. Involuntary and Coercive Guilty Plea

Petitioner argues that his guilty plea was coerced and involuntary because, at or around the time of his guilty plea, he was under duress because the court threatened the imposition of a 50-year-to-life sentence, thereby presuming his guilt. For the reasons set forth below, this claim fails on the merits.

The Supreme Court has held that, under the Due Process Clause of the United States Constitution, a trial court can only accept a guilty plea which is "done voluntarily, knowingly, and intelligently, with sufficient awareness of the relevant circumstances and likely consequences." *United States v. Adams*, 448 F.3d 492, 497 (2d Cir. 2006) (quoting *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005)); *accord Godinez v. Moran*, 509 U.S. 389, 400 (1993). Normally, a guilty plea may not be collaterally attacked, since it constitutes an admission to all elements of the charged crime. *Salas v. United States*, 139

F.3d 322, 324 (2d Cir. 1998). However, a defendant may challenge a guilty plea on the grounds that it was not made knowingly and voluntarily. *United States v. Simmons*, 164 F.3d 76, 79 (2d Cir. 1998).

To that end, though, "the representations of the defendant, his lawyer, and the prosecutor at [] a [plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977); *see also United States v. Gonzalez*, 970 F.2d 1095, 1101 (2d Cir. 1992) ("[T]he District Court could properly reject [petitioner's] unsupported allegations" that his plea was not knowing or voluntary, "which merely contradicted [petitioner's] earlier statements made under oath at his plea allocution."); *Vasquez v. Filion*, 219 F. Supp. 2d 194, 197-98 (E.D.N.Y. 2002) (defendant's "unequivocal," "rational" and "coherent" responses to the trial court's questions during plea hearing belied later claim that plea was not knowing and voluntary).

In the present case, petitioner asserts that the trial court coerced him into pleading guilty by threatening the imposition of a 50-year-to-life sentence, and in doing so, also presumed his guilt. A careful review of the record reveals no such threat or presumption of guilt. On the contrary, the record demonstrates the following: (1) defense counsel stated that petitioner wished to enter into a plea agreement, which petitioner confirmed; (2) petitioner demonstrated his desire to plead guilty through his plea allocution; (3) petitioner affirmed that he had discussed the plea with his attorney; (4) petitioner denied that he was threatened or coerced into

entering the plea;[8] (5) petitioner definitively stated that he was pleading guilty voluntarily and of his own accord; and (6) petitioner stated that he understood the sentencing consequences of his plea agreement and that his plea carried the same legal force as a jury verdict of guilty. (*See generally* Plea Tr.) The only reference to a "50-year-to-life sentence" arose when the trial court accurately stated that petitioner "face[d the] possibility of 25-to-life on each of the bank robbery charges because there were two separate incidents . . . ." (Plea Tr. at 5-6.) This statement does not support claims of coercion or presumption of guilt.[9] In fact, moments after notifying the petitioner and his counsel of the possibility of prison, the trial court asked petitioner, in open court, whether any threats were made "by anyone for you to have entered plea of guilty to these two robbery charges." (Plea Tr. at 5.) Petitioner replied, "No, sir," (Plea Tr. at 6), thereby confirming that no threats were made. Accordingly, petitioner's claims of duress and

coercion related to the alleged threat of a "50-to-life sentence" are belied by his unequivocal, sworn statements at the plea hearing. In short, there is no evidence whatsoever of duress in connection with the guilty plea. Therefore, even assuming *arguendo* the claim is not procedurally barred, it is without merit.

2. Ineffective Assistance of Counsel

Petitioner next contends that he received ineffective assistance of counsel because counsel waived petitioner's right to appeal without his consent. Under the standard articulated in *Strickland v. Washington*, 466 U.S. 668 (1984), a defendant is required to demonstrate two elements in order to state a successful claim for ineffective assistance of counsel: (1) "counsel's representation fell below an objective standard of reasonableness," *id*. at 688, and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

The first prong requires a showing that counsel's performance was deficient. However, constitutionally effective counsel embraces a "wide range of professionally competent assistance," and "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 690). The performance inquiry examines the reasonableness of counsel's actions under all circumstances, keeping in mind that a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight." *Greiner*, 417 F.3d at 319 (quoting

---

[8] Specifically, at the plea hearing, the trial court asked petitioner: "Have any threats been made to you by anyone in order for you to have entered a plea of guilty to these two robbery charges?" (Plea Tr. at 6.) Petitioner answered, "No, sir," at which time the trial court then asked: "Any threats by the police department, assistant district attorney, your attorney, the Court or anyone else?" (Plea Tr. at 7.) Petitioner again replied, "No, sir." (Plea Tr. at 7.) The trial court then asked: "Are you pleading guilty of your own free will?" and petitioner replied that he was. (Plea Tr. at 7.)

[9] Furthermore, the Court notes that the plea offer extended by the trial court was lower than the Assistant District Attorney's offer. After acknowledging that the prosecution offered a sentence of 15 years on both counts of robbery, with time to run concurrently, the trial court reinstated an offer of 12 years on both counts of robbery, with time to be served concurrently, which petitioner accepted. (Plea Tr. at 2, 5, 7.)

*Rompilla v. Beard*, 545 U.S. 374, 389 (2005)).

The second prong focuses on prejudice to the defendant. The defendant is required to show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "Reasonable probability" means that the errors were of a magnitude such that it "undermines confidence in the outcome." *Pavel v. Hollins*, 261 F.3d 210, 216 (2d Cir. 2001) (quoting *Strickland*, 466 U.S. at 694). In the context of a guilty plea, in order to satisfy the "prejudice" prong, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). A habeas petitioner bears the burden of establishing both deficient performance and prejudice. *United States v. Birkin*, 366 F.3d 95, 100 (2d Cir. 2004). As set forth below, petitioner's claim fails to satisfy either element.

Petitioner argues that his trial counsel was deficient because counsel waived petitioner's right to appeal without his consent. However, petitioner repeatedly acknowledged at his plea hearing that he understood that he was waiving that right as part of his plea bargain. (*See* Plea Tr. at 4 ("THE COURT: And . . . you're waiving your right to appeal based on the plea here today. Is that your understanding? PETITIONER: Yes."); *see also* Plea Tr. at 7 ("THE COURT: Lastly from me at this time, are you waiving your right to appeal? By that I mean this case – these two cases are being concluded, ended, on this court level today. You're waiving right to appeal to any higher court. Is that your understanding? PETITIONER: Yes.").) Therefore, it is clear that petitioner consented

to the waiver and that the attorney was not acting without his knowledge. Although petitioner's failure to show deficient performance would dispose of his ineffective assistance claim, the Court also finds that any alleged deficiencies in his trial counsel's performance did not result in prejudice to petitioner's case. Since petitioner himself consented, in open court, to a plea agreement by which he waived his right to appeal, it can hardly be said that he would not have pled guilty but for the alleged error. Therefore, it cannot be said that petitioner was prejudiced by his trial counsel's performance. In sum, petitioner's ineffective assistance claim fails on the merits.

### 3. Defective Indictment

Petitioner also claims that the grand jury indictment was factually insufficient to establish the crime charged, and therefore defective, because "defendant never had no weapon."[10] (Petition at 9.) However,

_____

[10] Petitioner also asserts, related to this claim, that the arresting police officers used an unnecessary amount of force, breaking four of petitioner's ribs, in an effort to coerce him into signing statements against his will. However, petitioner has failed to present any evidence substantiating this allegation. Moreover, at the plea hearing, the trial court specifically asked the petitioner if "[a]ny threats [were made] by the police department, assistant district attorney, your attorney, the Court or anyone else?" (Plea Tr. at 7.) Petitioner repeatedly answered that he was not threatened or coerced, and did not inform the trial court of any physical abuse that he allegedly suffered. As stated *supra*, statements made by a defendant at his allocution hearing carry a "strong presumption of verity" and, therefore, a district court may properly reject unsupported allegations made by that defendant at a later date that contradict statements made under oath. *See Blackledge v.*

respondent correctly notes that the indictment satisfied the basic requirements of due process by informing petitioner of the time, place and essential elements of his crime and, moreover, tracked the language of the statute allegedly violated. *See Edwards v. Mazzuca*, No. 00 Civ. 2290 (RJS) (KNF), 2007 WL 2994449, at *5 (E.D.N.Y. Oct. 15, 2007) ("Challenges to state indictments will merit habeas corpus relief only in the exceptional case where the indictment fails to satisfy the basic due process requirements: notice of the time, place, and essential elements of the crime.") (internal citations and quotations omitted); *see also Carroll v. Hoke*, 695 F. Supp. 1435, 1438 (E.D.N.Y. 1988) ("[C]onstitutional standards . . . ensure a defendant the opportunity to prepare a sufficient defense by requiring that an indictment inform the accused, in general terms, of the time, place and essential elements of the alleged crime."). As set forth below, even assuming *arguendo* that there was a factual basis for this claim, that claim fails on the merits because the purported grand jury defect does not provide a basis for habeas relief.

As a threshold matter, alleged defects in a state grand jury proceeding generally cannot provide grounds for habeas relief. *See, e.g., Dwyer v. Duval*, 23 F.3d 394, 394 (1st Cir. 1994) (rejecting habeas claim based on invalidity of a conviction due to lack of seal

_____

*Allison*, 431 U.S. 63, 74 (1977); *see also United States v. Gonzalez*, 970 F.2d 1095, 1101 (2d Cir. 1992). It is not the province of this Court to now doubt the veracity of statements petitioner made at his plea allocution with nothing more by way of proof than petitioner's after-the-fact, self-serving allegations of coercion. Accordingly, petitioner's claims of duress and coercion related to alleged police battery, even if not procedurally barred, are without merit.

on indictment); *Lopez v. Riley*, 865 F.2d 30, 32 (2d Cir. 1989) (finding that claims brought in a state grand jury proceeding are not cognizable in a collateral attack brought in federal court); *Norwood v. Hanslmaier*, No. 93 Civ. 3748 (NG), 1997 WL 67669, at *2 (E.D.N.Y. Feb. 11, 1997) (finding that denial of defendant's right to testify in the grand jury and lack of foreperson's signature on indictment did not raise federal constitutional claims). Moreover, given petitioner's subsequent guilty plea to two counts of Robbery in the First Degree (which he has failed to demonstrate was not made knowingly and voluntarily), any alleged defects in the grand jury process cannot serve as grounds for habeas relief. *See, e.g., Whitehurst v. Senkowski*, 485 F. Supp. 2d 105, 117 (N.D.N.Y. 2007) (holding that if a guilty plea is valid, petitioner is precluded "from now challenging the legality of events that occurred prior to the entry of that plea . . . including his habeas claims that the prosecution improperly used statements he made to law enforcement agents to secure the Indictment, or which otherwise argue that the evidence presented to the grand jury to obtain that accusatory instrument was illegally tainted") (citation and quotation marks omitted); *Crispino v. Allard*, 378 F. Supp. 2d 393, 414 (S.D.N.Y. 2005) ("[I]f [petitioner] entered a voluntary, knowing, and intelligent guilty plea, any and all non-jurisdictional defects raised in the indictment are waived."). Accordingly, any alleged defects in the grand jury process do not provide grounds for habeas relief in this case.

### 4. Insufficient Allocution

Petitioner alleges that the plea allocution on May 18, 2004 is factually insufficient to satisfy the necessary elements of Robbery in the First Degree because "the court failed to

inquire whether he actually possessed a dangerous instrument at the time of the crime." (Petition at 2.) New York State Penal Law Section 160.15 provides, in part, that:

> A person is guilty of robbery in the first degree when he forcibly steals property and when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime:
>
> (3) uses or *threatens* the immediate use of a dangerous instrument.

*Id.* (emphasis added). As discussed *supra*, the petitioner clearly stated during his plea allocution that, on each occasion for which a charged was levied in court, he passed the bank employee a note stating: "I got a gun, if you give me a [dye] pack I'll kill you." (Plea Tr. at 8-9.) Petitioner's admission that he threatened the immediate use of a dangerous instrument – a gun – to the bank teller, regardless of whether he actually possessed one, and his notification that he would kill the teller should he attempt to give him a dye pack to mark the money, clearly satisfies the statute. In short, petitioner allocuted to his threatened use of a deadly instrument in both instances where he forcibly stole money. Therefore, his plea allocution was sufficient under New York law and did not violate any constitutional standards. Thus, this claim does not provide a basis for *habeas* relief and is without merit.

### 5. Double Jeopardy

Petitioner finally argues that his sentence of two concurrent terms of imprisonment of twelve years plus five years of post-release supervision for two counts of first-degree robbery violates his Fifth Amendment protection against double jeopardy. Specifically, he submits that he was sentenced for the same crime twice and will be doubly punished by the imposition of post-release supervision after his release. The Double Jeopardy Clause of the Fifth Amendment ensures that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. This right protects, among other things, against multiple punishments for the same offense. *McCullough v. Bennett*, 413 F.3d 244, 246 (2d Cir. 2005) (citing *North Carolina v. Pearce*, 395 U.S. 711 (1969)).

The Supreme Court has distinguished between a statute that punishes a continuous offense and one that punishes distinct acts when two acts violate the same statute, as in the pending case. *See Blockburger v. United States*, 284 U.S. 299, 302 (1932) (two drug sales to the same person on different days punishable as separate offenses). The Court focused its inquiry on the intention of lawmakers to criminalize each act. "'The test is whether the individual acts are prohibited, or the course of action which they constitute. If the former, then each act is punishable separately . . . . If the latter, there can be but one penalty.'" *Id.* (quoting WHARTON'S CRIMINAL LAW § 34 n.3 (11th ed. 1912)); *compare Mansfield v. Champion*, 992 F.2d 1098 (10th Cir. 1993) (one offense for stealing both money belonging to one victim and money belonging to a store) *with United States v. Farmigoni*, 934 F.2d 63 (5th Cir. 1991) (two offenses for using fraudulent letter of credit to defraud two banks).

As stated *supra*, Swanton had two distinct goals, which he carried out in two distinct

actions; he robbed two separate banks on two separate dates, and each act was exclusive of the other. Petitioner had a distinguishable *actus reus* and *mens rea* in each action, clearly separating the two robberies. Moreover, the sentence of five years of post-release supervision, in addition to two concurrent twelve year terms of imprisonment, was a part of the plea bargain agreed to by the petitioner during the sentencing hearing. (Sentencing Tr. at 4-5.) "[T]he Double Jeopardy Clause does not prohibit the imposition of any additional sanction that could, in common parlance, be described as punishment. The Clause protects only against the imposition of multiple criminal punishments for the same offense, and then only when such occurs in successive proceedings." *Hudson v. United States*, 522 U.S. 93, 99-100 (1997) (internal quotations and citations omitted). The imposition of post-release supervision does not constitute a separate punishment for either count to which petitioner pled guilty; it represents one part of the sentence as a whole. Furthermore, the sentence was entered at one hearing; he was not sentenced to the imprisonment and post-release supervision at successive hearings. Therefore, the Court finds that petitioner's sentence comports with constitutional standards, rendering his double jeopardy claim meritless.

## IV. CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is denied in its entirety as time-barred. Moreover, all claims raised therein are procedurally barred/defaulted and, in any event, fail on the merits. Petitioner has failed to point to any state court ruling that was contrary to, or an unreasonable application of, clearly established federal law, or that resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. In short, none of petitioner's claims have merit. Because petitioner has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall issue. *See* 28 U.S.C. § 2253(c)(2).

The Clerk of the Court shall enter judgment accordingly and close this case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated:    May 19, 2009
            Central Islip, New York

\* \* \*

Petitioner appears *pro se*. The attorney for the respondent is Rosalind C. Gray, Esq., Suffolk County District Attorney's Office, 200 Center Drive, Riverhead, New York 11901.